**FUAMATALA YUHASHI and FAAITU P. SAMANA,**
both of Pago Pago, Plaintiffs

**v.**

**LOPETI MALAGA of Pago Pago, Defendant**

No. 20-1957

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: "Autapini" in Pago Pago]

February 28, 1958

Heard at Fagatogo December 23, 1947 before MORROW, *Chief Judge* and APE and MALEPEAI, *Associate Judges.*

Fuamatala, counsel for the plaintiffs.

Ropati Manuma, counsel for the defendant.

OPINION OF THE COURT

MORROW, *Chief Judge.*

The facts in this case are not in dispute. The plaintiffs and the defendant are members of the Patea Family of

Pago Pago. The defendant has his house on the land Autapini while the plaintiffs have a house on the same land where they spend part of their time. The defendant has a small pineapple and banana plantation on Autapini about 50 feet from the plaintiffs' house. The plaintiffs put a chicken wire fence around a part (about 15 feet by 25 feet) of the plantation preparatory to making use of the area enclosed as a chicken yard. The defendant tore down the fence. The chicken fence was erected by the plaintiffs with the consent and approval of their matai Patea who is also the matai of the defendant. Prior to the erection of the fence, there was a family meeting at which the matter of erection of the fence was considered. It was agreed, somewhat over the opposition of Malaga and Leulu, the parents of the defendant (Leulu, his mother, is a blood member of the Patea Family) that the plaintiffs should fence in a small area between the plantation of the defendant and the plaintiffs' house. However, later the plaintiffs objected to the use of this area for their chicken yard because offensive odors from it might penetrate their house. When the matai was informed of this he told the plaintiffs that they might fence in a part of the defendant's plantation instead of the area agreed upon at the family meeting. The plantation is farther away from the plaintiffs' house than the small area agreed upon at the family meeting.

At the outset it is necessary for us to determine who owns Autapini. The defendant claims that it is registered in the name of Leulu, Mama and Tasali and that the plaintiffs have no rights in the land.

Patea Pila had 4 children, viz: Tasali, Leulu, Mama, and Salapu. Tasali, a son and the oldest child, had a daughter Faaitu who married Sipi. Plaintiffs Fuamatala and Faaitu are the daughters of Faaitu and Sipi. Tasali, the oldest son of Patea Pila, died in the flu epidemic in Upolu in 1918.

After his death Salapu took his deceased brother's name Tasali in place of the name Salapu. He is the present Patea. The opinion and decree filed in the case of *Leulu, Mama, and Tasali v. Tui Poi,* No. 2-1930 (H.C. of Am. S.) on Feb. 12, 1930, shows that the Patea (he was Patea Pila) offered the land Autapini for registration on Mar. 10, 1924. The land was registered in the name of Poi Tui on May 12, 1924 in Vol. I, Register of Native Titles, pp. 170–172. However, an examination of the actual registration at p. 172 shows that the name in which it was originally registered was "Patea," that the name "Patea" was later partially erased and the name "Poi-Tui" written in over it. A magnifying glass clearly reveals this alteration of the record of the registration. On Feb. 12, 1930, the High Court "decreed that the registration now appearing in the books of the Registrar of Titles, of the land, 'Auta-Pini' in the name of Tui-Poi be, and it is hereby decreed null and void." This decree, of course, had the effect of nullifying the registration.

Patea Pila died in 1926. Subsequent to the decree of Feb. 12, 1930, Leulu, Mama and Tasali instituted proceedings to have the land registered. Poi-Tui filed an objection. The case (*Poi of Pago Pago v. Patea of Pago Pago,* No. 12-1930 (H.C. of Am. S.)) came on for hearing and the court rendered a judgment which, excluding the provision as to costs, reads as follows:

"The issues in this case raised with the filing for registration of the land 'Autapini' by Leulu, Mama and Tasali, heirs at law of Patea, deceased, and the objection to said registration by Poi Tui having come on to be heard by this Court on the 16th day of July 1930,

"And the proponents having appeared in person and by their attorney Crossfield Hunkin and the objector having appeared in person and the testimony of witness having been heard and considered and it appearing to the Court that the title to said land 'Autapini' is in the heirs of Patea, it is accordingly

"ADJUDGED and DECREED that the title of said land 'Autapini' be registered in the name of the said Patea, and that the said Poi Tui has no right, title or interest in said lands.

"It is further ordered that the registration of said land 'Autapini' as it appears in Volume I Register of Native Titles Page 172 declared null and void by a decree of this Court made and entered the 12th day of February 1930 be restored nunc pro tunc with the substitution of the name 'Patea' for the name of 'Poi Tui' on Page 172 of said Volume I Register of Native Titles."

The entry made at page 172 in Vol. I, Register of Native Titles immediately following the registration decreed null and void by the decree of Feb. 12, 1930 reads as follows:

"The foregoing registration of the land 'Autapini' having been declared null and void, and a new trial of the issue as to the ownership of said land having been ordered by a decree of this Court made on the 12th day of February 1930—and a new trial of said issue raised by the posting of said land for registration by the heirs of Patea and the filing of objections by Poi Tui having been heard and a final decree having been made on the 17th July 1930 by which it was held that the title to said land 'Autapini' is in the heirs of Patea, to wit: Leulu, Mama, and Tasali, the foregoing registration is hereby restored and will be effective nunc pro tunc, but with the substitution of the name 'PATEA' for the name 'Poi Tui' on page 172 of this Register of Native Titles Vol. I. It being understood that the heirs of Patea succeed to his right, title and interest in the land surveyed and registered."

Is this land Autapini registered in the names of Leulu, Mama and Tasali or is it registered in the name of Patea?

The 4th paragraph of the judgment of July 16, 1930 provides that the "registration of the said land 'Autapini' as it appears in Volume I, Register of Native Titles, page 172 declared null and void by a decree of this Court made and entered the 12th day of February 1930 be restored nunc pro tunc with the substitution of the name 'Patea' for the name 'Poi Tui' on page 172 of said Volume I, Register of Native Titles." "Nunc pro tunc" means "now for then." The legal effect of this nunc pro tunc order was to make

the registration of the land Autapini effective in the name of Patea as of May 12, 1924. This was not a registration in the name of a dead man for Patea did not die until 1926.

The actual registration of Autapini as it appears from the registration part of the entry dated 17 July 1930 on page 172 of Vol. I, Register of Native Titles, is in the name of Patea. It is not in the name of Leulu, Mama, and Tasali. All that precedes the words "the foregoing registration is hereby restored and will be effective nunc pro tunc" in the registration entry of 17 July 1930 in Vol. I, Register of Native Titles, page 172 including the statement therein "that the title to said land 'Autapini' is in the heirs of Patea, to wit: Leulu, Mama and Tasali" is recital and not the actual registration. Recital is not registration.

██ "The general rules of construction of written instruments have been held to apply to the construction of judgments. The intention of the court must be determined from all parts of the instrument, and the words and clauses thereof should be construed according to their natural and legal import. The judgment must be read in its entirety, and it must be construed as a whole so as to bring all of its parts into harmony as far as this can be done by fair and reasonable interpretation and so as to give effect to every word and part, if possible, and to effectuate the obvious intention and purpose of the court, consistent with the provisions of the organic law,—Doubtful or ambiguous judgments are to have a reasonable intendment to do justice and avoid wrong. Where a judgment is susceptible of two interpretations, that one will be adopted which renders it the more reasonable, effective and conclusive and which makes the judgment harmonize with the facts and law of the case and be such as ought to have been rendered." 49 Corpus Juris Secundum, pp. 863–866. "Sometimes, it is declared that the interpretation of a judgment must be characterized by justice and fairness." 30 Am.Jur. 835.

We think that the only fair and just interpretation of the judgment of July 16, 1930 is to construe it as requiring that Autapini be registered in the name of Patea which it actually was by the entry of July 17, 1930 at page 172 of Vol. I, Register of Native Titles.

Furthermore, the obvious actual intention of the Court in the judgment of July 16, 1930 was that the land should be registered in the name of Patea—otherwise there would have been no provision for the restoration nunc pro tunc of the registration of May 12, 1924 with the substitution of the name "Patea" for the name "Poi-Tui."

■ Referring again to the registration entry of 17 July 1930 it is noted that the last sentence thereof reads "It being understood that the heirs of Patea succeed to his right, title and interest in the land surveyed and registered." This sentence does *not* say the "above-named heirs of Patea" but the *"heirs of Patea* (emphasis added)." The heirs of Patea at the time of the entry were Faaitu, Leulu, Mama and Tasali. The "above-named heirs of Patea" would have been the last three only. Furthermore, if the restoration of the May 12, 1924 registration nunc pro tunc with the name Patea substituted for the name Poi-Tui was to be effective it is necessary to consider that the court intended by its July 16, 1930 judgment to have the land registered in the name of Patea and not in the names of Leulu, Mama and Tasali as heirs of Patea. Patea was living on May 12, 1924. He had no heirs at that time. A living man has no heirs. An heir is a person who inherits and no person can inherit until the death of his ancestor. "In the strictly proper sense of the word, no one is an heir until after the death of the ancestor, and the word signifies one who has succeeded to a dead ancestor, and cannot be applicable to one whose ancestor is living." 29 Corpus Juris 290.

■ The heirs at law of Patea included Faaitu, the

mother of the plaintiffs, as well as Leulu, Mama and Tasali. Sec. 977 of the Code (the same provision was in previous codes) provides that, there being no devise of it, "All real property shall lineally descend forever, to the issue of the person who died last seized entitled to, or having interest therein, but shall not lineally ascend, except as hereinafter provided" and the same section further provides that "The lineal descendants of any person deceased shall represent their ancestor, and stand in the same place as the person himself would have done had he been living."

As we have already stated, the oldest son of Patea Pila was the Tasali who died in 1918. He left a daughter Faaitu, the mother of the plaintiffs, who was living when her grandfather Patea Pila died in 1926. By statute she inherited the same rights in Autapini as her deceased father Tasali would have inherited had he been living. She was an heir at law of Patea Pila.

As before stated, Patea died in 1926. At the time of his death his heirs included Faaitu, the mother of the plaintiffs, as well as Leulu, Mama and the present Patea. Each inherited an undivided one-fourth interest in the registered land from their ancestor Patea. Faaitu died after Patea died. Her undivided one-fourth was inherited by her heirs who are the plaintiffs. Defendant Lopeti has no interest in the land. His mother Leulu is still living. She was present at the hearing in this case. Leulu's interest will upon her death (assuming she does not dispose of her fourth prior to her death and does not will it away from her children) pass to her children including defendant Lopeti if he is then living. Lopeti has no interest in Autapini now. As we have said, an heir does not inherit until the death of his ancestor, and Lopeti's ancestor Leulu is still living. Faaitu, the ancestor of the plaintiffs, is dead.

Upon the death of Patea intestate in 1926 his children Leula, Mama, Tasali (the present Patea), and Faaitu,

329

his granddaughter (who by Sec. 977 of the Code above quoted, represented her father Tasali, the son of Patea who died in 1918), inherited Autapini becoming tenants in common of the property. "On the death of an owner of property intestate, the descent of the property by operation of law to several heirs creates a tenancy in common." 86 Corpus Juris Secundum 372. When Faaitu died intestate, the plaintiffs, who are her children, succeeded to her undivided one-fourth interest and became tenants in common with Leulu, Mama, and Tasali, the present Patea.

█ "Since each tenant in common is equally entitled to the use and possession of the common property, and may exercise acts of ownership with respect thereto, as discussed supra § 20, a tenant in common has an interest in the possession of every part of the property, and from the nature of the estate must necessarily be in possession of the whole property. So, a tenant in common has the right to occupy the whole of the common property and every part thereof, and cannot be ejected for occupying more than what would be his share of the premises on partition; nor can the rights to possession of the premises, which all tenants in common of the property are entitled to as between themselves, be affected by the acts of one dispossessing another by force or fraud." 86 Corpus Juris Secundum 383.

█ In view of the foregoing statement of the law respecting the right of possession of a tenant in common we think that the plaintiffs had a right as against the defendant, who is a stranger to the title to Autapini (though his mother is not) to put up their chicken fence where they did and that the defendant had no right to tear it down. The matai of the family had authorized the plaintiffs to put up the fence in accordance with Samoan customs which we must recognize. Sec. 2 of the Code provides that "The customs of the Samoans not in conflict with the laws of Ameri-

can Samoa or the laws of the United States concerning American Samoa should be preserved."

It follows, therefore, that the defendant should make reparation to the plaintiffs for the damage done by him to the plaintiffs' fence. Since the defendant did not take away the wire but left it for the plaintiffs beside their fale, the damage is not the entire value of the wire and the labor required to put up the fence. The wire was only slightly damaged by being taken down. We think that $8.00 will compensate the plaintiffs for the damage done by the defendant.

The plaintiffs' petition contains a prayer that an "injunction be issued to the defendant to stop interference on the premises which is now under the possession of the plaintiffs." There was no evidence introduced by the plaintiffs at the hearing showing that the defendant is interfering, or threatens to interfere, with the possession of the premises now occupied by the plaintiffs in Autapini. This prayer should be denied.

## JUDGMENT

Accordingly, it is ORDERED and ADJUDGED that the prayer of the plaintiffs for an injunction be and the same is hereby denied.

It is further ORDERED and ADJUDGED that the defendant Lopeti Malaga pay the plaintiffs $8.00 plus $5.00 costs, $6.50 to be paid on or before March 15, 1958 and the remaining $6.50 on or before April 1, 1958.

And it is further ORDERED and ADJUDGED that the defendant Lopeti Malaga pay to the Clerk of the High Court $12.50 as costs, the same to be paid on or before April 15, 1958.